# Exhibit A-8

other parts of the whole communication, thereby violating basic contract interpretation principles regarding the "four corners rule," in an attempt to rob it of its clear meaning and intent.

On page 3 of the decision, the Court stated: "The Brady's based their claim on language in the second amendment to the 1980 Co-op conversion offering plan, stating that "[t]he 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law."

It is not just language. The act of reserving air rights was a common practice in 1980 when the Offering Plan was created, and that footnote was part of a whole communication which included amending the 1st footnote and the addition of a new 6th paragraph footnote. The Court leaves out that the whole communication pertained to the permanent square foot partitioning of the building, and it was made clear through the amended 1st paragraph footnote that all other blocks of shares were only entitled to have rights to the square foot listed in the schedule of units, and no rights to any other permissible floor area that may from time to time be given to the premises. It is illogical to mainatin that the development rights were not conveyed to the unit that is allowed to construct or extend additional structures, but instead given to a unit that is forbidden to have any floor area beyond the amount listed in the offering plan. (Exhibit D).

The Court fails to mention this unit was the sponsor's unit, and that the seventh paragraph footnote was added as a final term before which the sponsor agreed to declare the offering plan effective. The sponsor measured the lot and the building down to the square foot, and made clear that any permissible rights to construct or extend structures above the 104,000 sq ft utilized by the existing structure were to be conveyed for and reserved to the 12th floor and roof unit.

14

## THE BEST PROOF OF WHAT SOMETHING MEANS IS WHAT IT DID IN THE PAST

In the mid-1980's, pursuant to the seventh paragraph footnote to the schedule of units, the Co-op permitted the sponsor to build a 1,600 square foot room on the roof. About 2002, the Co-op utilized its development rights to legalize the construction. This proves the Co-op and its attorneys all understood the meaning and intent of the seventh paragraph footnote since the best proof of what it meant was what it did when the situation arose in the past. How can my claims to utilization of those same rights eleven years later be dismissed by this Court as "meritless"?

This Court leaves out the admission made by Justice Friedman in her July 2, 2008 decision that 25 years ago my predecessor was permitted to build a 1,600 square foot structure on the roof pursuant to the 7th paragraph footnote to the schedule of units, which would mean that now I was the one given the right to have the utilization of those same rights.

Justice Friedman made this further comment in her July 2, 2008 decision:

Air rights existed and were well known in the real estate community in 1980 when the Offering Plan was amended to add paragraph 7. Had the parties, who were sophisticated business people, intended to convey or reserve air rights to the 12th floor and roof unit, they could easily have expressly so provided." *James Brady & Jane Brady v. 450 West 31st Owners Corp.*, (Index No. 603741/2007, July 2, 2008).

The fact is that the sponsor did so expressly provide for the conveyance of air rights. The language of the conveyance is precisely that of "sophisticated business people." This can be shown by comparing the seventh paragraph footnote accepted definitions of air rights:

- "The rights to develop further the heretofore unused space above a building or other structure." The American Heritage College Dictionary (3rd Ed. 1993) "

- "The right to use all or a portion of airspace above real property." Black's Law Dictionary (5th Ed. 1979)"

15

## THE COURT DISMISSED MY CLAIMS TO AVOID DISCOVERY

On July 3, 2014, twelve days before the Court issued its July 15, 2014 decision, I wrote a letter to this Court asking that it sign subpoenas so seven people with knowledge of this and the prior transaction testify. (Exhibit C). I identified to the Court who these individuals are and what they would be testifying about. The body of the letter read as follows:

- Arthur Greene, the sponsor of the cooperative offering plan, who will confirm that the intent of the seventh paragraph footnote was to convey and reserve all permissible development rights that may from time to time be given to the premises for the exclusive utilization of the 12th floor and roof unit, which is what it says on its face.
- Gary Barnett, President of Extell Development Corp., who will confirm that his firm discarded Justice Friedman's internally inconsistent July 2, 2008 decision.
- Dov Herz, VP at Extell who offered me $2.5 million to waive my rights back in 2008, and he will confirm that it was the strategy of the Co-op Corporation and its attorneys to try to seize the rights rather than obtain a waiver. His recommendation at the time was that I sue the Board and its attorneys.
- Ryan Nelson, VP for Acquisitions at Sherwood Equities, shortly after purchasing the lot in 2012, initially admitted that Sherwood's understanding according to the prior court decisions, Sherwood had to pay in order for me to waive my rights.
- Don Ende of Commonwealth Title Insurance Co., who will explain why Commonwealth rejected Justice Friedman's internally inconsistent July 2, 2008 decision and refused to insure title to the air rights during the transaction with Extell.
- Howard Goldman, an attorney who recently submitted a deceptive affidavit on behalf of the defendants, in order to deceive the court.
- Brian Kanarek, a real estate agent and mutual contact of Sherwood and mine, who was contacted by Sherwood shortly after they purchased the property. Sherwood's Ryan Nelson was familiar with the court's decision and admitted their understanding that they would have to pay for a waiver.

None of the people listed above are my friends – indeed, some are hostile. Yet all of the defendants pleaded with this Court not to sign the subpoenas. Why? Because the defendants know that Gary Barnett of Extell would have to give the reasons why he abandoned the transaction with 450 Owners Corp. and be pinned against fellow developer Jeffrey Katz; that Dov Herz of Extell would have to reveal the Co-op Board's strategy to seize the air rights and why he suggested I sue the Co-op; the title insurance company would have to confirm why they

16

did not insure title to Extell; and Arthur Greene, the sponsor, would have to reveal the intent of the seventh paragraph footnote.

At the same time I submitted the request for subpoenas, I asked this Court's clerk, Michael Rand, when I could expect a decision. He said in a few months. Then suddenly, less than two weeks after I filed the deposition requests, the Court hands down a decision precisely so it could rule against me before having any documentary or testimonial evidence.

### The Court Does Not Disclose Why the Sale Between the Co-op and Extell Failed to Close

The Court not only rewrites my contract, but it also rewrites the case history to leave out all facts that are part of validating my claim. On page 5 of the decision, this Court states "the transaction between Extell and the Co-op failed to close." This Court omits its knowledge of the fact that the reason this transaction with Extell failed to close was because the Co-op Corporation failed to obtain a waiver of my unit's rights which Extell demanded and needed. This was made clear by Stanley Kaufman, attorney for the Co-op, who, in his Affirmation opposing my motion for reargument, states that:

> The Court should be made aware of the fact that the development rights transaction between the Cooperative and Extell has now fallen through. <u>Having previously asserted that the Cooperative was in breach of the contract as a result of the claims being asserted by the Bradys, and having been unable to close prior to a critical June 30, 2008 deadline for obtaining certain tax benefits, Extell advised the Cooperative that it is no longer interested in proceeding with the development rights acquisition.</u> While the Cooperative disputes that it is in breach of the contract, to avoid costly litigation with Extell, the Cooperative has agreed to return Extell's contract deposit. (Affirmation in Opposition to Plaintiff's Motion for Reargument, 8/15/08).

While the Co-op Corp. is unwilling to take on the expense of litigating against Extell, they have no problem litigating against me, a fellow shareholder, attempting to assert the rights given me under the contract with them.

17

## The Court Leaves Out the Intervention from the Court of Appeals

In the decision, the Court simply stated on page 4 that "leave to appeal to the court of appeals was denied with costs." This statement leaves out that before denying the motion, the Court of Appeals intervened and made the Co-op Corporation sign a stipulation stating that they would agree to drop all counter claims against me, while leaving me with the ability to sue the Co-op Corporation for damages caused by the attempted transaction with Extell Development Corp. ***How, then, can this Court assert that my claims are "meritless" and "frivolous" when the Court of Appeals did not order that I drop them?***

The only cost I had to incur was a $100 filing fee. This Court leaves out that the Court of Appeals considered that the motions to leave to appeal even though the motion for leave was denied by the Appellate Division. The Court of Appeals is the state's highest court, and it is very rare that they intervene over the objections of the Appellate Division. It is an invitation only court that would not have intervened had it not smelled wrongdoing.

## Sherwood Certainly Tortiously Interfered with My Contract with 450 Owners Corp.

Sherwood and 450 Owners Corp. threatened that I sign the waiver of my unit's rights because they knew they needed it in order to have clear title. Regardless of the courts having held erroneously that the Co-op could sell the development rights without a waiver, there is no way for them to do so without tortiously interfering with the rights leased to my unit. The Court twice mentions this interference in the decision:

> Initially, the Co-op and Sherwood sought to obtain a waiver from the Bradys regarding the air rights (id. at _ _ 219, 224; Katz Complaint, _ _ 33, 35). However, when Brady refused to sign the waiver as presented (Katz Complaint, _ _ 54-56), the Co-op and Sherwood proceeded without his consent. ( page 5)
>
> That the Co-op or Sherwood initially sought a waiver from Brady does not constitute an "admission" that the ZLDEA interfered with any of Brady's rights. Indeed, according to

18