Exhibit A-9

Brady, he was specifically told by the Co-op that "the transaction will be consummated with or without your waiver" (Co-op Complaint _ 222)

After the ZLDEA was signed, a 40 foot easement restriction was implemented and I no longer have any right to construct or extend structures on or above the roof since the development rights needed to build were shifted to Sherwood's lot so that they could use the rights to construct or extend a larger structure on their parcel of land.

This was an act of tortious interference with my contract even if this Court chooses not to construe the request for a waiver as an "admission" that the ZLDEA interfered with my rights.

## THE COURT TRIVIALIZES THE RIGHTS LEASED TO ME

On page 3 of the decision: "Of course, the owner of the lot, and, hence, the air rights, was the Co-op, and the Brady's merely owned shares in the Co-op since they occupied the twelfth floor pursuant to a proprietary lease (see *MacMillan, Inc. v CF Lex Assocs.*, 56 NY2d 386 [1982] [Consent of tenant not necessary for zoning lot merger.])"

This court knows that the circumstances are totally different than in *MacMillan*. In *MacMillan*, the tenant only leased space in the building and the lease did not provide the tenant the right to construct or extend structures that may be permitted under applicable law. My proprietary lease, on the other hand expressly includes the right to have the exclusive utilization of the 12th floor, the exclusive utilization of the roof, and the exclusive utilization of any permissible floor area that may from time to time be permitted under applicable law.

### The Court Further Mocks & Disparages Me

The Court's resentment and hostility is clearly shown on page 22 of the decision:

> While Brady claims to be scandalized by the substantial profits enjoyed by Sherwood in flipping the adjoining lot to the McCourt entity, he does not seem offended by the idea that his $5 million purchase of the Building's top unit should entitle him to control over what he claims are $100 million purchase of the Building's top unit should entitle him to control over what he claims are $100 million worth of air rights under a theory which

19

<u>only he is clever enough to understand and which was only revealed to him by certain "professionals" more than a year after he bought his shares.</u>

It is the theory under which my contract with the Co-op needed to be rewritten *four times* which is known only to the justice of this state. The Court appears to be horrified that I could have a valid claim and grant of rights that needed to be satisfied before the Sherwood sale.

## THE COURT ENCOURAGES THE CO-OP TO RETALIATE AGAINST ME

The Court further had a specific purpose in labeling me as "a person that acted in bad faith, litigating matters that had already been determined," and as "a person that brought meritless actions, abusing the judicial process," and in characterizing my claims as "claims that lack any substance." It is transparent the Court did this not only to help the Co-op get away with seizing my Unit's rights, but also to ensure there is a Supreme Court decision labeling me as such. The Court did this to encourage the Co-op Corporation to not only seize the air rights appurtenant to my unit, but also retaliate against me by attempting to seize my unit as well. The Court even provided them with a case which they could use to attempt doing just that:

> Even accepting the unverified statement of Brady's counsel, and ignoring the broad discretion granted to the Co-op to take action under the business judgment rule (See *40 W. 67th St. v Pullman,* 100 NY2d 147 [2003] [applying that standard in reviewing co-op's decision to terminate tenant's proprietary lease "after finding that his behavior was more than its shareholders could bear"] (Decision, p. 20).

### The Court Should Have Ruled I Was Partially Constructively Evicted

The Co-op's unlawful shifting of my right to utilize the premises development rights and the placement of easements over my demised premises certainly constitutes a partial constructive eviction since I no longer had the availability to utilize additional permissible floor area. A full abandonment is not necessary under New York law.

20

### The Court Suppressed the Testimony that it Received from the Co-op Corporation's Land Use Attorney Expert Harold Goldman

This Court states on page 9 of decision "Also, submitted was an affidavit by a land use attorney opining on the interpretation of certain aspects of the City's Zoning Lot Resolution, as well as a reply brief which was based largely on the record of oral argument, which had been held after Brady's opposition was submitted but prior to the return date on the motion."

This court suppresses what it learnt in that affidavit, which was it was impossible to build habitable structures, either commercial or residential, without having the right to utilize permissible development rights. This finding would prove that it would be impossible for the coop corporation to sell the premises development rights without interfering with my right to construct or extend habitable structures.

### The Court Blames Me for Not Giving an Alternative Meaning to the 7th Paragraph

On page 4 of the decision, the Court states "The Bradys did not advance any interpretation of the offering plan other than the one which would entitle them to use all of the building's development rights."

Brady did not have to advance any other interpretation of the offering plan other than the one that entitled him to use the premises' permissible development rights because on the face of the contract and the affirmed decision specifically state that "to the extent that may from time to time be permitted under applicable law," I have the right to construct or extend structures.

Contrary to the Court's assertion, I did not have to provide any details of what I may build at this time, and had a right to hold at this time, since my contract did not just give me the right of first refusal, but rather gave me the right to exercise my right to utilize the premises' development rights to construct or extend additional structures at whatever time I may chose.

21

## The Court Completely Misstates My Cause of Action

On page 11 the Court states "Brady, however, seeks to distinguish the instant cases from the Prior Action on the ground that the judgment there only declared that the Co-op "is the owner of, and has the right to transfer the transferable development rights ("TDRs")" and that the offering plan, "does not convey or reserve TDRs to [the Bradys]" (emphasis supplied)

This statement is false. In the prior action, I was seeking a declaration of my rights. In this action, I was seeking declaratory judgment that my rights as described in the contract and in the affirmed decision were violated pursuant to the ZLDEA. As the Court acknowledged in the prior decisions, Justice Friedman never reached the issue of whether the ZLDEA violated my rights because she stated the issue was moot because Extell had cancelled the contract.

## The Court Directly Threatened Me

**The Court threatens me on page 23**: *"The Court declines to impose a filing injunction upon Brady at this time, though he is warned not to further test the court's patience by prosecuting claims that have either been determined or that he has been told are not ripe."* The Court could not have been harsher yet threatens that I not test its patience, which is just cruelty.

## THE COURT WAS WRONG TO IMPOSE SANCTIONS

This Court unjustly awarded sanctions against me. As shown below, under New York Law, sanctions are punitive in retribution for past conduct. It is clear this Court is trying to punish me for standing up to the Justices that unlawfully rewrote the description to my unit. Under 22 N.Y.C.R.R. § 130-1.1, "conduct is frivolous if:"

> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
> (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
> (3) it asserts material factual statements that are false.

22

In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the (1) circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct; (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.

Not one of these criteria applies to my suit. Rather, it is clear this Court is issuing sanctions to be retributive and to punish past conduct. This Court was made well aware by the defendants and the judges in the prior action that I created a website exposing their unlawful actions, and their rewriting of the description of my unit. I contested the unlawful actions of Justice Friedman and the Appellate Division. I contested the fact that Justice Friedman unlawfully rewrote the description of my unit after I refused her threat to accept the $500,000 offered from the Co-op Corporation to waive my rights. This was $2 million less than Extell offered prior to the start of court-ordered May 6, 2008 settlement talks.

This Court cannot characterize my claims as "frivolous" given that the Court itself:

- recognizes an inconsistency in the prior decisions which, on the one hand allow me to build structures requiring the use of air rights, and on the other hand deny that he has any interest in the premises' air rights;
- recognizes that "Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred;" (July 15, 2014 decision, p.15); and
- further recognizes that "Brady correctly notes" that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions.

Furthermore, the Court's claims that the prior decision were squarely against me, and thus that my present suit is a waste of judicial resources, is completely false. The prior decision:

- led Extell Development to offer me $2.5 million to waive my rights;
- led the Co-op Corp to offer Brady $500,000 to waive my rights ;
- led to the cancellation of the contract between Extell and Owners Corp. based on the Co-op's breach of contract for falsely claiming that it had not already reserved and conveyed the premise's development rights to anyone;

23

- led the Court of Appeals to intervene and require the Co-op Corporation drop all counterclaims against the me;
- left me with an Order, Adjudge and Declaration that affirmed my rights to build structures on or above the roof, in other words to use development rights.

***The Above Facts Cannot Be Squared with the Court's Reasoning for Sanctions.***

## THE COURT SHOULD HAVE RECUSED ITSELF PRIOR TO ANY DECISION

The Court states that: "Brady cites no ground for recusal other than his belief, after an oral argument, that his actions are in danger of dismissal. This is insufficient and smacks of judge shopping." (Decision, p. 9).

Of course there would be no basis to determine if the Court was showing favoritism and bias against plaintiff until witnessing it in person at the March 18, 2014 oral arguments. Furthermore, the Court added a second prong to the criteria for recusal by claiming that the bias and/or favortism must be from an extra-judicial source, as if the appearance of bias were not enough to warrant recusal.

After the request for recusal was submitted, the Court of Appeals issued a decision which confirmed that the appearance of favoritism alone warrants dismissal. *In the Matter of the Hon. Cathryn M. Doyle*, 2014 NY Slip Op 04801. That threshold was certainly reached here.

There is a likelihood that the Court also knows I made a second attempt to complain to the Commission on Judicial Conduct and the Manhattan District Attorney about the prior judges who unlawfully rewrote the description of my unit to void the rights given therein. This may well have influenced the change in the Court's temperament between the time of the March 18, 2014 hearing and the July 15, 2014 decision.

Also as stated in detail in the motion papers, this court blatantly defended developer Jeffrey Katz and Sherwood Equities, as doing nothing more than "buying air rights" and dismissed the importance of the fact that they asked for a waiver of my rights "as not meaning

24

very much." The Court further denied my properly-filed sur-reply with one word, "Denied," less than 48 hours after it was filed, meaning it never considered the pleading; and further denied me the right to amend the case caption to match what had been pled in the Complaint, erroneously claiming I was trying to add defendants when it was I was only trying to correct a clerical error.

**CONCLUSION**

The Court should have given a declaratory judgment in my favor based on this Court's numerous admissions in the July 15, 2014 decision and the March 18, 2014 hearing that the Co-op Corp. could not sell the premises' permissible development rights without violating their contract with me, and without also violating the court decisions affirming my right to construct structures on or above the roof; and further the Court should find a trespass over my property in the form of an easement granted for Sherwood's benefit over my property – which the Court admits the ZLDEA creates. The ZLDEA affects a clear violation of my affirmed rights, yet the Court finds that the Co-op and defendants owed no duty to the rights held to belong to my unit.

Rather, the Court dismissed every one of my claims as meritless, is attempting to have me pay the legal fees of all the people who conspired to seize my rights, and further set me up so the Co-op Corporation could seize my unit. The Court must reverse the July 15, 2014 decision, recuse itself, and allow a non-biased judge to adjudicate these claims.

Dated: August 20, 2014
New York, New York

Sworn before me on this ___ day of

August 2014

MARYBETH W FAHEY
ID No. 2499958
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb 1, 2018

By: _____
James H. Brady
450 W. 31st St., 12th Floor
New York, NY 10001
(201) 923-5511

25