EXHIBIT E

INDEX NO. 157779/2013

FILED: NEW YORK COUNTY CLERK 07/16/2014

NYSCEF DOC. NO. 99

RECEIVED NYSCEF: 07/16/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **SHIRLEY WERNER KORNREICH**                    PART 54
                                      _Justice_

Index Number : 157779/2013
BRADY, JAMES H

vs                                           INDEX NO. _____

450 W. 31ST STREET OWNERS CORP               MOTION DATE 3/20/14

Sequence Number : 001                        MOTION SEQ. NO. _____
DISMISS ACTION

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 17–32

Answering Affidavits — Exhibits _____ | No(s). 60–65

Replying Affidavits _____ | No(s). 96, 98

Upon the foregoing papers, it is ordered that this motion is

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 7/15/14                     SHIRLEY WERNER KORNREICH  J.S.C.   J.S.C.

1. CHECK ONE: ................................................ ☒ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER      ☐ SUBMIT ORDER
                                                              ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT  ☒ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-------------------------------------------------------------------X
JAMES BRADY,

                 Plaintiff,                           Index No.:  157779/2013

                                                         **DECISION AND ORDER**

       -against-

450 WEST 31ST STREET OWNERS CORP.,
DESIREE GREENE, individually and as President of
the Board for 450 West 31st Street Owners Corp.,
JIM FRANCO, individually and as a member of the
Board for 450 West 31st Street Owners Corp., KAREN
ATTA, individually and as a member of the Board for
450 West 31st Street Owners Corp., PRISCILLA
MCGEEHON, individually and as a member of the Board
for 450 West 31st Street Owners Corp., BILL SMITH,
individually and as a member of the Board for 450 West
31st Street Owners Corp., OWAIN HUGHES, LINDA
KRAMER, individually and as a member of the Board for
450 West 31st Street Owner's Corp., CHODOSH
REALTY SERVICES INC., JON CHODOSH, STANLEY
KAUFMAN, KAUFMAN FRIEDMAN PLOTNICKI &
GRUN, LLP, DEIRDRE A. CARSON, GREENBERG
TRAURIG, LLP, VINCENT HANLEY and HANLEY &
GOBLE,

                    Defendants.
-------------------------------------------------------------------X
JAMES BRADY,

                 Plaintiff,                           Index No.:  654226/2013

       -against-

JEFFREY KATZ, individually and as CEO and principal
owner of Sherwood Equities, Inc., LONG WHARF REAL
ESTATE PARTNERS, LLC, CHICAGO TITLE
INSURANCE CO., DENNIS W. RUSSO, HERRICK
FEINSTEIN LLP, and FRANK MCCOURT, individually
and as Chairman and CEO of McCourt Global LP,

                    Defendants.
-------------------------------------------------------------------X

1

KORNREICH, SHIRLEY WERNER, J.:

Motion sequence numbers 001, 002, 003, 005 and 006 in the action entitled *Brady v 450 West 31st Street Owners Corp., et al.*, index No. 157779/2013 (the Co-op Action) and motion sequence numbers 001, 002, 003, 004 and 006 in the action entitled *Brady v Katz, et al.*, index No. 654226/2013 (the Katz Action) are hereby consolidated for disposition. All the respective defendants in each action move to dismiss (CPLR 3211), and several move for sanctions and for an injunction to enjoin Brady from filing further suits. Plaintiff opposes. Separately, Brady, in the Co-op Action, moves for leave to file a sur-reply, and in the Katz Action, moves to amend the caption and for recusal of this court. For the reasons that follow, Brady's motion to file a sur-reply is granted, his motions to amend the caption and for recusal are denied, both actions are dismissed with prejudice, the requests for sanctions are granted and the requests to enjoin further actions are denied.

I.   *Background*

A.   *The Extell Transaction*

In 2006, plaintiff James Brady purchased the twelfth floor and penthouse unit (the Unit) of the commercial co-op located at 450 West 31st Street in Manhattan (the Building) from Owain Hughes, for use as an event space (Co-op Action Complaint, ¶¶ 33, 49). The deal was brokered by Jon Chodosh of Chodosh Realty Services Inc. (*id.* at ¶ 36). During the same period, also with the involvement of Chodosh and his company, the fee owner of the Building, 450 West 31st Street Owners Corp. (the Co-op), was negotiating the sale of the building's air rights to non-party Extell Development (Extell), which owned an adjoining, vacant lot (*id.* at ¶¶ 36—37). In August 2007, the Co-op and Extell entered into a contract to sell the air rights for approximately

2

$11.25 million (*id.* at ¶ 61—62).   The Co-op was represented by Vincent Hanley of Hanley &

Goble LLP and Deirdre Carson of Greenberg Traurig, LLP (*id.* at ¶¶ 41, 51, 57).   Desiree Greene

was the president of the Co-op board at the time (*id.* at ¶ 62).

   *B.  Prior Action*

   On November 13, 2007, Brady and his wife commenced an action against the Co-op and

Extell, alleging that the Building's development rights belonged to their Unit (complaint, ¶¶

13—18, *Brady v 450 W. 31st St. Owners Corp.*, Sup Ct, NY County, index No. 603741/07 [the

Prior Action]).   The Bradys based their claim on language in the second amendment to the 1980

co-op conversion offering plan, stating that "[t]he 12th floor and roof unit shall have, in addition

to the utilization of the roof, the right to construct or extend structures upon the roof or above the

same to the extent that may from time to time be permitted under applicable law."

   The Bradys claimed that the Co-op and Extell had entered into an agreement "whereby

Transferable Development Rights ('TDRs') appurtenant to [their] Unit [would] be combined

with lands owned by Defendant Extell so as to constitute one single zoning lot . . . Such a

combination is colloquially described as a 'sale of air rights'" (*id.* at ¶¶ 21—22).   They sought to

enjoin the sale to Extell and asked for declarations that the contract of sale between the Co-op

and Extell was void and that the Bradys had "the sole right to the TDRs" (*id.* at ¶¶ 28—37).[1]

---

[1] After defendants answered (and the Bradys' motion for a preliminary injunction against the sale
was denied), the Bradys served an amended complaint, which, *inter alia*, sought a declaration
that "the rights purportedly conveyed by the Contract of Sale belong solely to the 12th Floor . . .
and that the [Co-op] cannot without the consent of the owner of the 12th Floor sell or transfer
any portion of these rights" (Prior Action, amended complaint, ¶ 79).   Of course, the owner of
the lot, and, hence, the air rights, was the Co-op, and the Bradys merely owned shares in the Co-
op, since they occupied the twelfth floor pursuant to a proprietary lease (*see MacMillan, Inc. v
CF Lex Assocs.*, 56 NY2d 386 [1982] [consent of tenant not necessary for zoning lot merger]).

On motions for summary judgment, the court, by decision and order filed July 7, 2008, dismissed the amended complaint. Upon reargument, the court adhered to its prior decision, explicitly rejecting the idea that the Bradys' consent was required to allow the contemplated sale to go forward (Prior Action, decision and order, Mar 13, 2009, at * 2, Friedman, J.). It held that while the offering plan gave the Bradys the right to "build structures on or above the roof" (*id.*), their contention that they were entitled to utilize all of the building's air rights in doing so was "untenable" (*id.* at 3—4). The court held that: 1) the Co-op "is the owner of, and has the right to transfer, the [TDRs] that are granted or permitted pursuant to the Zoning Resolution, to the parcel of land on which the building . . . is located"; 2) the offering plan "does not convey or reserve the TDRs to" the Bradys; and 3) the Bradys have "the right to construct or extend structures upon the roof or above to the same to the extent that may from time to time be permitted under applicable law" (*id.* at 4—5). As the Bradys did not advance any interpretation of the offering plan other than one which would entitle them to use all of the Building's air rights or provide any details as to what, if anything, they actually wanted to construct on the Building's roof, the court held that there was no actual controversy which required a judicial determination of the scope of the Bradys' right to build; it declined to reach the issue, noting that its decision should not be construed as implying that the Bradys had the right to utilize *any* air rights in connection with roof construction (*id.* at 3—5). Judgment was entered on March 26, 2009, and was unanimously affirmed on appeal (*Brady v 450 W. 31st St. Owners Corp.*, 70 AD3d 469 [1st Dept 2010]). [2]  Leave to appeal to the Court of Appeals was denied, with costs (15 NY3d 710

---

[2] Plaintiff's complaint characterizes Justice's Friedman's decision as "internally inconsistent" and the Appellate Division decision as contradictory.

4

[2010]), as was the Bradys' motion to reargue the denial (16 NY3d 731 [2011]). The Co-op was

represented in the Prior Action by Stanley Kaufman of Kaufman Friedman Plotnicki & Grun

LLP.

C.    *Sale of the Air Rights*

The transaction between Extell and the Co-op failed to close. In April 2011, the Extell

lot was sold to Sherwood 30 Land Group LLC (Sherwood) (Co-op Complaint, ¶ 218). The Co-

op began negotiating the sale of the Building's air rights, this time to Sherwood. Initially, the

Co-op and Sherwood sought to obtain a waiver from the Bradys regarding the air rights (*id.* at ¶¶

219, 224; Katz Complaint, ¶¶ 33, 35). However, when Brady refused to sign the waiver as

presented (Katz Complaint, ¶¶ 54—56), the Co-op and Sherwood proceeded without his consent.

On June 27, 2012, they entered into a Zoning Lot Development and Easement Agreement

(ZLDEA) conveying the building's air rights to Sherwood along with most of the Co-op's right

to purchase certain additional air rights from the City of New York (Office of the City Register,

CRFN 201200027377[4] [the ZLDEA]).[3] The agreement also granted Sherwood a perpetual

easement for light, air and view on the airspace more than 40 feet above the penthouse roof

(ZLDEA §§ 1.40, 2.21). Sherwood paid approximately $11.5 million for the rights (Co-op

Complaint, ¶ 258; Katz Complaint ¶ 107). The ZLDEA was executed by Greene on behalf of the

Co-op and by Jeffrey Katz on behalf of Sherwood. It was recorded with the City Register, along

with the required title company certificate. Dennis Russo of Herrick Feinstein LLP served as

Sherwood's counsel. Chicago Title Insurance Company prepared and filed the certificate.

---

[3] The Co-op reserved its ability to purchase the right to build an additional 25,000 square feet for
commercial purposes (ZLDEA §§ 1.38, 2.1).

A little more than a year later, on August 13, 2013, Sherwood sold its lot, along with its appurtenant air rights and easements, to McCourt Partners for $167 million (Katz complaint, ¶ 98). Frank McCourt is the chairman and CEO of McCourt Global; McCourt Partners is alleged to be a subsidiary of McCourt Global (Katz complaint, ¶¶ 10, 97).

D.      Actions by the Co-op

At a shareholders meeting held in June 2009, some months after judgment had been entered in the Prior Action, the Board proposed imposing a $500 to $750 fee for any event held at the Building, as well as requiring security guards to patrol the lobby during events (Co-op Complaint ¶¶ 166—75). The proposed new rules were to give preference to the Building's tenants and their guests over event attendees in the use of the Building's single, rather slow passenger elevator (*id.* at ¶ 170—72). Brady, whose Unit at that time was the only one with a certificate of occupancy allowing it to be used as an event space, successfully opposed the 2009 proposals, and they were not adopted (*id.* at ¶ 175). At a shareholders meeting held in June 2011, it was announced that directors would no longer be elected by cumulative voting (*id.* at ¶ 211).

II.    *Procedural History*

Brady commenced the Co-op Action on August 23, 2013, by filing a summons with notice. A verified complaint was filed on November 23, 2013, in which Brady alleges the following causes of action, numbered here as in the complaint:  1) a declaration that the transfer of rights by the Co-op is unlawful and void *ab initio* as against all of the defendants; 2) a declaration that plaintiff has been partially constructively evicted and is entitled to a full abatement of his maintenance; 3) breach of contract and breach of the covenant of good faith and

6

fair dealing as against the Co-op and Hughes; 4) tortious interference with contract (the offering

plan) against all of the defendants; 5) fraud against the Co-op, the members of its board, Stanley

Kaufman and his law firm, who were the Co-op's counsel in the Prior Action, Vincent Hanley

and his law firm and Deirdre A. Carson and her law firm, attorneys who represented the Co-op in

the Extell deal, and the broker and brokerage firm that brokered both the sale of the Unit to

plaintiff and were involved in the Extell deal; 6) negligent misrepresentation against the Co-op;

7) prima facie tort against all of the defendants; 8) gross negligence against all of the defendants

due to the Co-op's breach of fiduciary duty to plaintiff by selling the air rights; 9) gross

negligence against the Co-op, its board members and its lawyers for reckless disregard of

plaintiff's rights; 10) another claim for negligent misrepresentation against the Co-op; 11)

slander of title against the Co-op; 12) unjust enrichment against all of the defendants; 13)

violation of Section 487 of the Judiciary Law as against the Co-op's attorneys; and again, 14)

breach of fiduciary duty and gross negligence against the Co-op and its board members.  The

causes of action arise from the sale of the air rights, the imposition of the easements and the

decision to change the Building's regulations and the corporation's voting method.

Approximately two weeks later, on December 6, 2013, Brady commenced the Katz

Action against: Jeffrey Katz, the CEO and a principal of Sherwood; Long Wharf Real Estate

Partners, LLC (Long Wharf), Sherwood's partner in the transactions at issue; Chicago Title

Insurance Co.; Frank McCourt, individually and as Chairman and CEO of McCourt Global LP,

the parent company of the entity which purchased the adjoining lot from Sherwood; and

Sherwood's counsel in the Sherwood/McCourt transaction.  In the Katz action, Brady alleges the

following causes of action, numbered here as in the complaint: 1) tortious interference with

contract against Sherwood, Long Wharf, their attorneys and Chicago Title; 2) unjust enrichment against all of the defendants; 3) aiding and abetting breach of fiduciary duty against Sherwood, Long Wharf, their attorneys and Chicago Title; 4) conspiracy to defraud against all of the defendants; [4] 5) "Frank McCourt was not a bona fide purchaser for value" against Frank McCourt and McCourt Partners; 6) slander of title against all of the defendants; and 7) a declaration that the rights conveyed by the ZLDEA "were the rights held to be appurtenant to [the] 12th Floor and Roof unit."

All defendants now move for dismissal, and Brady moves to file a sur-reply in response to the reply affidavits submitted by the Board in further support of its motion to dismiss the Co-op Complaint. Additionally, Brady moves to amend the Katz Action by adding a number of Sherwood and McCourt-related entities as defendants. Brady is represented by counsel in the Co-op Action, but is *pro se* in the Katz Action. Following oral argument on the motions to dismiss, Brady moved for recusal of this court.

III.    *Discussion*

   A.    *Recusal*

A judge may not preside over a matter "to which he is a party, or in which he has been attorney . . . , or in which he is interested, or if he is related by consanguinity or affinity to any party within the sixth degree" (Judiciary Law § 14). "Absent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal" (*People v Moreno*, 70 NY2d 403,

---

[4] While the fourth cause of action in the Katz Complaint is styled "conspiracy to defraud," New York does not recognize conspiracy as a separate cause of action (*Blanco v Polanco*, 116 AD3d 892, 895—96 [2d Dept 2014]). Accordingly, the court deems the fourth cause of action as one for fraud, asserted against all defendants.

405 [1987]).  While disqualification is appropriate where a judge harbors or appears to harbor a

personal bias or prejudice against a party (Rules of Chief Admin of Cts [22 NYCRR] § 100.2 [E]

[1] [a]), "for any alleged bias and prejudice to be disqualifying 'it must stem from an

extrajudicial source and result in an opinion on the merits on some basis other than what the

judge learned from his participation in the case'" (*People v Glynn*, 21 NY3d 614, 618 [2013]

quoting *Moreno*, 70 NY2d at 407).  Brady cites to no ground for recusal other than his belief,

after oral argument, that his actions are in danger of dismissal.  This is insufficient and smacks of

judge shopping.  In the exercise of her discretion, the court declines to recuse herself.

   *B.  Sur-Reply*

   In reply to Brady's opposition to its motion to dismiss the Co-op action, the Co-op

submitted, for the first time, an affidavit of Desiree Greene addressing the proposed house rule

changes, the change in voting method and the distribution of the proceeds from the Sherwood

transaction (Co-op Action, affidavit of Desiree Greene, sworn to on March 26, 2014).  Also

submitted was an affidavit by a land use attorney opining on the interpretation of certain aspects

of the City's Zoning Resolution, as well as a reply brief which was based largely on the record of

oral argument, which had been held after Brady's opposition was submitted but prior to the

return date on the motion.  Moreover, the brief raised arguments concerning the justiciability of

the instant actions which should have been raised in the moving papers.  Brady's request to

submit a sur-reply in response to these new arguments is appropriate and is granted.

   *C.  Dismissal Standard*

   On a motion to dismiss, the court must accept as true the facts alleged in the complaint as

well as all reasonable inferences that may be gleaned from those facts (*Amaro v Gani Realty*

9

Corp., 60 NY3d 491 [2009]; *Skillgames, L.L.C. v Brody*, 1 AD3d 247, 250 [1st Dept 2003]

[citing *McGill v Parker*, 179 AD2d 98, 105 (1992)]; *Mazzai v Kyriacou*, 98 AD3d 1088, 1090

[2d Dept 2012]; *see also Cron v Harago Fabrics*, 91 NY2d 362, 366 [1998]).  The court may not

assess the merits of the complaint or any of its factual allegations, but may only determine if,

assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable

cause of action (*Skillgames, id.* [citing *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 (1977)]).

Deficiencies in the complaint may be remedied by affidavits submitted by the plaintiff (*Amaro,*

60 NY3d at 491).  "However, factual allegations that do not state a viable cause of action, that

consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by

documentary evidence are not entitled to such consideration." (*Skillgames*, 1 AD3d at 250

[citing *Caniglia v Chicago Tribune-New York News Syndicate*, 204 AD2d 233 (1st Dept 1994)]).

>    *1.   Claims Arising out of the ZLDEA and the Prior Action*

"Collateral estoppel precludes a party from relitigating in a subsequent action or

proceeding on an issue raised in a prior action or proceeding and decided against that party or

those in privity" (*Buechel v Bain*, 97 NY2d 295, 303 [2001]).  For collateral estoppel to be

invoked, "[t]here must be an identity of issue which has necessarily been decided in the prior

action and is decisive of the present action, and there must have been a full and fair opportunity

to contest the decision now said to be controlling" (*id.* at 303—04).  In the Prior Action, the

court determined that the air rights belonged to the Co-op, not to the Bradys, who occupied their

unit under a proprietary lease.  The prior court relied on *Macmillan, Inc. v CF Lex Assocs.,*

*supra,* 56 NY2d 386, in which the Court of Appeals held that the consent of a tenant occupying

95% of a building's usable area was not needed for the fee owner to sell the parcel's air rights

(Prior Action, decision and order, Mar 13, 2009 at *1, Friedman, J.).  It further held that the

offering plan did not "convey or reserve" the air rights to the Bradys, that the Co-op was the

owner of such rights and had the right to transfer them, and that the Bradys' consent was not

necessary to allow for such transfer (*id.*).  Thus, to the extent that Brady claims that he was

wronged by the transfer of the Co-op's air rights, such claims must be dismissed as a matter of

collateral estoppel or *res judicata* (*see O'Brien v City of Syracuse*, 54 NY2d 353 [1981] [where

prior lawsuit dismissed, plaintiff "may not bring another action . . . in an attempt to recover

damages for the same acts as those on which the first lawsuit was grounded"]).

     Brady, however, seeks to distinguish the instant cases from the Prior Action on the

ground that the judgment there only declared that the Co-op "is the owner of, and has the right to

transfer, the *transferable development rights* ("TDRs")" and that the offering plan "does not

convey or reserve *TDRs* to [the Bradys]" (emphasis supplied).  According to plaintiff, the term

"TDRs" refers exclusively to a transfer of air rights between ***non-contiguous lots***, and, therefore,

has no bearing on the transaction at issue here, which shifted the air rights to an adjoining lot.

     In so arguing, Brady relies on the Planning Department's online "Zoning Glossary",

which states that "[a] transfer of development rights (TDR) allows for the transfer of unused

development rights from one zoning lot to another . . . where the transfer could not be

accomplished through a zoning lot merger" (Co-op Complaint ¶¶ 143—44, citing New York

City Dept. of Planning, Zoning Glossary, http://www.nyc.gov/html/dcp/html/zone/glossary.shtml

[accessed Oct 24, 2013]).  Even accepting, for the sake of argument, that the statements on the

11

Planning Department's website have the force of law,[5] this entry merely indicates that there are different *methods* by which air rights can be transferred. One such method is by transfer of air rights between non-contiguous parcels. Another, more common method, is by merging zoning lots (*see, e.g., Hand v Hosp. for Special Surgery*, 34 Misc3d 1212 [A] [Sup Ct. NY County 2012] *aff'd* 107 AD3d 642 [1st Dept 2013]; *Fisher v Bd. of Stds. & Appeals*, 21 Misc3d 1134 [A] [Sup Ct NY County 2008] *aff'd* 71 AD3d 487 [1st Dept 2010]). These variations, however, have nothing to do with the nature of the asset -- to wit, a license under the zoning code to build a certain amount of square footage -- and the question of who owns and controls that asset.

Furthermore, there is no good faith basis for asserting that when the court in the Prior Action issued a ruling concerning who controlled the lot's "transferable development rights", it was actually making a declaration about the propriety of transferring air rights between non-adjoining lots. The proposed air rights sale to Extell, like the consummated sale to Sherwood, involved a zoning lot merger, a fact known both to the court and plaintiff (*see* Prior Action, decision and order, July 2, 2008 at *1, Friedman, J.). In fact, the court in the Prior Action did not refer to a "transfer *of* development rights". Instead, the phrase employed by the court, which Brady finds so confusing, was "transferable development rights." As should be apparent, these two phrases are not the same. Brady's argument is based exclusively on language he found online but which was never actually used by this court.

---

[5] They do not (New York City Charter § 200 [zoning rules to be changed only after notice and comment and vote by City Council]). That the Appellate Division once cited to the Planning Department's Zoning Handbook in defining "air rights" in *Matter of Metro. Tr. Auth.*, 86 AD3d 314, 318 (1st Dept 2011) does not transform the Handbook into law. It also should be noted that the Zoning Glossary, which Brady cites, is a different document than the Zoning Handbook.

12

A review of the papers in the Prior Action reveals that in referring to air rights as "transferable development rights" or "TDRs", the court adopted the phraseology used by the parties, ***including Brady***. For example, in his affidavit submitted in support of his motion for a preliminary injunction, at the commencement of the Prior Action, Brady described the contemplated transaction between Extell and the Co-op as one in which "Transferable Development Rights ("TDRs") appurtenant to Plaintiffs' Unit will be combined with lands owned by Defendant Extell so as to constitute one single zoning lot, as defined in Section 12–10 of the New York City Zoning Resolution" (Prior Action, affidavit of James Brady, sworn to November 13, 2007 ¶ 10). Brady added there that "[s]uch a combination is colloquially described as a 'sale of air rights'" (*id.*). Similarly, the Bradys' motion in the Prior Action for a preliminary injunction sought an order restraining "Defendants . . . from consummating or entering into any agreement pertaining to Transferable Development Rights and/or any zoning lot development agreement or other arrangement with respect to [the Building]" (Prior Action, order, Nov 13, 2007, Friedman, J.). Moreover, in the Bradys' opposition to the defendants' motion for summary judgment in the Prior Action, they describe air rights as "transferable development rights",[6] arguing that while their right to build was distinct from such "transferable development rights", it nevertheless gave them the ability to block the sale, a claim which the court, in the Prior Action, rejected (Prior Action, decision and order, Mar 13, 2009 at *2).

---

[6] *See* Prior Action, plaintiffs' opposition brief, Apr 7, 2008 at 2: "Defendants would have the Court believe that Plaintiffs are claiming the transferable development rights that the Building gained by virtue of the Hudson Yards rezoning . . . Defendants intentionally mischaracterize Plaintiffs' Amended Complaint in a transparent effort to equate transferable development rights . . . with the right to build upon or above the roof" (emphasis in original).

In sum, the issue of who owns or controls the air rights appurtenant to the Building's lot has already been decided in favor of the Co-op. Any claim by Brady arising out of that question is barred. That the Co-op or Sherwood initially sought a waiver from Brady does not constitute an "admission" that the ZLDEA interfered with any of Brady's rights. Indeed, according to Brady, he was specifically told by the Co-op that "the transaction will be consummated with or without your waiver" (Co-op Complaint ¶ 222). [7] Finally, Brady's argument that Extell's abandonment of the air rights transaction in June 2008 rendered the Prior Action moot is unpersuasive, given that the Appellate Division failed to dismiss the matter as moot when it affirmed the decision (upon the Bradys' appeal) in 2010.

However, as Brady correctly notes, the court in the Prior Action recognized that the offering plan conferred upon him a right to build structures on the Building's roof, but expressly declined to reach the question of whether the Extell transaction would have violated that right. Brady, therefore, contends that he is not barred by the prior judgment from now claiming that the ZLDEA violated his right to build.

Again, the ZLDEA's conveyance of air rights cannot serve as the basis for a claim that Brady's right to build has been violated. It has already been adjudged that while the owners of the Unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"]; *Brady v 450 W. 31st*

---

[7] In any case, nothing that the Co-op or any other party might have said would have any effect on the scope and finality of the court's prior existing judgment.

14

*St. Owners Corp.*, 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves

for plaintiffs the right . . . to construct or extend structures on the roof that may be built without

the use of the building's development rights"]). Contrary to Brady's contentions, and as the

court in the Prior Action already noted, this is not a contradiction (Prior Action, decision and

order, Mar 13, 2009 at *2, citing *Wing Ming Props. (USA) Ltd. v Mott Operating Corp.*, 79

NY2d 1021 [1992]). Nonetheless, the ZLDEA also imposes a light-and-air easement in favor of

the adjoining lot on the space more than forty feet above the penthouse roof. Strictly speaking,

Brady is correct that the question of whether such an easement interferes with his right to build

structures on the roof otherwise permitted by applicable law has never been determined and so is

not barred.

This court, like the prior court, however, declines to reach the issue, since, as before,

Brady has not developed a sufficient record to show the existence of an actual controversy (Prior

Action, decision and order July 2, 2008 at *5, citing *40-56 Tenth Ave. LLC v 450 W. 14th St.

Corp.*, 22 AD3d 416 [1st Dept 2005]). As in the Prior Action, there is no indication that the Co-

op or anyone else has told Brady that he cannot build on the Building's roof. Nor is there any

contention that Brady had or has any plans to build *anything* on the Building's roof.

Consequently, the question of whether the easement interferes with Brady's right to build is not

ripe for adjudication, as "the courts may not issue judicial decisions that 'can have no immediate

effect and may never resolve anything'" (*Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]

quoting *New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 531 [1985]). This is

especially so given that the light-and-air easement begins more than forty feet above the roof of

Brady's penthouse. The absence of any indication that Brady intends to build a forty foot

15

structure or that any such structure would comply with all applicable laws, including the zoning

code's limits on the Building's floor area, renders the question of whether the light-and-air

easement violates Brady's right academic (*compare Big Four LLC v Bond Street Lofts*

*Condominium*, 94 AD3d 401 [1st Dept 2012] [finding actual controversy over plaintiff's right to

lease unit where defendant condominium had objected to actual proposed lease in writing] *with*

*Waterways Dev. Corp. v Lavalle*, 28 AD3d 539, 540—41 [2d Dept 2006] [developer not entitled

to declaration it was entitled to zoning variance where it had not applied for building permit and

town had therefore made no final determination]).

 In short, plaintiff cannot maintain any cause of action based on the Co-op's conveyance

of air rights or the imposition of an easement, since a prior judgment of the court, affirmed on

appeal, has held that the Co-op is entitled to do the former and there is no present, actual

controversy involving the latter.  As a result, Brady is not entitled to the declarations he seeks in

his first cause of action in the Co-op Action and in the fifth and seventh causes of action in the

Katz Action.  Similarly, he is not entitled to a declaration that he has been partially

constructively evicted and owes no maintenance (Co-op Complaint, second cause of action).  To

establish a constructive eviction, partial or other, "there must be a wrongful act of the landlord

which deprives the tenant of the beneficial enjoyment or actual possession of the demised

premises" (*see Barash v Penn. Term. Real Estate Corp.*, 26 NY2d 77, 82 [1970]).  Also, the

tenant must abandon the premises (*id.* at 83).  Neither a wrongful act by the Co-op nor

abandonment of the premises is alleged.

 Furthermore, in the absence of any claim to air rights under the offering plan, plaintiff

cannot sustain claims for breach of contract (*see Canzona v Atanasio*, 2014 NY Slip Op 4459 [2d

16

Dept 2014] [element of breach of contract is defendant's breach of its contractual obligation and damages resulting therefrom]), breach of the covenant of good faith and fair dealing (*see ABN AMRO Bank, N.V., v MBIA Inc.*, 17 NY2d 208, 228 [2011] [covenant of good faith and fair dealing embraces pledge not to do anything which destroys or injures rights of party under contract]), and tortious interference with contract (*see NBT Bancorp. v Fleet/Norstar Fin. Grp.*, 87 NY2d 614, 621 [1990] [breach of contract is element of tortious interference with contract]). Thus, the third and fourth causes of action in the Co-op Complaint and the first cause of action in the Katz Complaint are dismissed.

Brady's allegations of fraud (Co-op Complaint, fifth cause of action; Katz Complaint, fourth cause of action) or negligent misrepresentation (Co-op Complaint, sixth and tenth causes of action) based on the transfers or attempted transfers of the air rights also fail. Both fraud and negligent misrepresentation require justifiable reliance (*J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]; *Nigro v Lee*, 63 AD3d 1490, 1492 [3d Dept 2009]), and an actionable injury (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]; *Heard v City of New York*, 82 NY2d 66, 74 [1993]). These elements are missing here, since the prior court had found no actionable claim based on the same facts, a holding with which Brady was familiar. In a like manner, the air rights transfer cannot serve as a basis for breach of fiduciary duty (Co-op Complaint, fourteenth cause of action). To recover for breach of fiduciary duty there must be misconduct by the defendant and damages caused by the defendant's misconduct (*Varveris v Zacharakos*, 110 AD3d 1059 [2d Dept 2013], elements missing here. The failure to assert a viable claim for breach of fiduciary duty precludes the claim for aiding and abetting breach of fiduciary duty (Katz Complaint, third cause of action).

Brady further alleges causes of action for gross negligence (Co-op Complaint, eighth,

and ninth causes of action), unjust enrichment (Co-op Complaint, twelfth cause of action; Katz

Complaint, second cause of action), and slander of title (Co-op Complaint, eleventh cause of

action; Katz Complaint, sixth cause of action). All are dismissed. "'[G]ross negligence is the

commission or omission of an act or duty owing by one person to a second party which discloses

a failure to exercise slight diligence….the act or omission must be of an aggravated character.'"

*Dalton v Hamilton Hotel Operating Co., Inc.*, 242 NY 481487 (1926). The Co-op and Sherwood

were entitled to enter into the ZLDEA and did not breach any duty or act negligently in doing so.

Likewise, the remaining defendants breached no duty of care in negotiating, authorizing or

participating in the further sale of the Co-op's rights. Additionally, the Prior Action, by holding

that the air rights were the Co-op's to sell, also prevents Brady from bringing a claim that the

benefit enjoyed by the Co-op or other parties from the transfer constitutes unjust enrichment

(*Paramount Film Distrib. Corp. v State*, 30 NY2d 415, 421 [1972] [essential inquiry in action for

unjust enrichment is whether permitting defendant to retain what plaintiff seeks to recover is

against equity and good conscience]). Moreover, Brady's claim that he is entitled to the air

rights is grounded in a contract (the offering plan), a contention which forecloses a cause of

action for unjust enrichment (*Coldwell Banker Commercial Hunter Realty v Rainbow Holding

Co.*, 2014 NY Slip Op 5049 [1st Dept 2014]).

Finally, the prior court's determination that Brady has no claim to the Building's air

rights obviates his cause of action for slander of title. "To support a claim for slander of title, it

was incumbent on plaintiff to allege facts which demonstrate that defendants made false

communications casting doubt on the validity of plaintiff's title with malicious intent, or at a

minimum, with 'reckless disregard for their truth or falsity'" (*Vollbrecht v Jacobson*, 40 AD3d 1243, 1247 [1st Dept 2007]).  Further, special damages are an element of the cause of action (*Rosenbaum v City of New York*, 8 NY3d 1, 12 [2006]).  Here, there were no false communications, malicious intent, or special damages.

### 2. Other Claims

Brady also seeks damages under theories of prima facie tort (against all defendants) and breach of fiduciary duty and gross negligence (against the Co-op, its board members and Hughes) for changing the Co-op's house rules and voting method (Co-op Complaint, ¶¶ 326—30, 383—99).  The corporate acts complained of took place, at latest, in 2011.  Thus, the Co-op Complaint's seventh cause of action for prima facie tort is time-barred (*Bohn v 176 W. 87th St. Owners Corp.*, 106 AD3d 598, 599 [1st Dept 2013] ["(T)he limitations period for a claim of prima facie tort is one year"] citing *Havell v Islam*, 292 AD2d 210 [1st Dept 2002]).  Even were this not so, Brady has failed to make out a claim for prima facie tort which requires intentional infliction of harm, resulting in special damages and without excuse or justification (*Freihofer v Hearst Corp.*, 65 NY2d 135, 142-43 [1985]).  The elements of measureable, special damages are not specifically alleged and excuse or justification on the part of defendants is clearly present (*id.* ["A critical element of [prima facie tort] is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages"]).

As to the Co-op Complaint's fourteenth cause of action, Brady concedes that the changes to the house rules proposed in 2009 and detailed in the Co-op Complaint were never adopted, and while a different set of changes were adopted in 2011, the complaint does not say what they are or how they have harmed Brady.  Instead, in the sur-reply to the Co-op's motion to dismiss,

19

Brady's counsel[8] argues that the 2011 amendments gave the Board "more control" and *allowed*

them to sanction the Bradys, without stating that the Co-op ever actually did so or explaining

what additional "control" was assumed by the Co-op Board.  Even accepting the unverified

statement of Brady's counsel, and ignoring the broad discretion granted to the Co-op to take

action under the business judgment rule (*see 40 W. 67th St. v Pullman*, 100 NY2d 147 [2003]

[applying that standard in reviewing co-op's decision to terminate tenant's proprietary lease

"after finding that his behavior was more than its shareholders could bear"]), the allegations in

the sur-reply are too vague and conclusory to give any party actual notice of why or how the

2011 house rule amendments give rise to a cause of action (CPLR 3013).[9]

    Further, in regard to the change in voting method, a provision for cumulative voting "can

be made only by the certificate of incorporation or amendment thereto filed pursuant to law"

(*Matter of Am. Fibre Chair Seat Corp.*, 265 NY 416, 420 [1934]).  Brady does not controvert the

Co-op's contention that the certificate of incorporation does not provide for cumulative voting,

nor does he allege that the shareholders ever agreed to amend the certificate to so provide

(*compare id.* at 421).  He, therefore, cannot maintain a cause of action arising out of the Co-op's

decision to discontinue the apparently unauthorized practice.  In any case, "the exclusive method

---

[8] Brady failed to verify the statements made by his lawyer, instead merely submitting an affidavit in which he avers that "[t]he exhibits submitted with [the] Sur-reply are true and correct copies of the originals kept in my files" (affidavit of James Brady, sworn to on April 1, 2014).

[9] Brady's counsel also claims in the sur-reply that Brady and his wife have been "charged additional charges without explanation" and that they pay higher fees than other Building tenants.  This statement does not appear to be related to any of the allegations in the actual Co-op Complaint regarding the house rules, and the court declines to treat the sur-reply as an amended pleading, particularly where the allegations are not included in an affidavit from a person with knowledge and are conclusory.

for testing the validity of an election is either through an action . . . brought by the Attorney-

General, or through a proceeding instituted under section 619 of the Business Corporation Law"

(*Matter of Schmidt*, 97 AD2d 244, 249 [2d Dept 1983] [citations omitted]). Accordingly, the

fourteenth cause of action in the Co-op Complaint are dismissed. Finally, statements or actions

made or taken by the Co-op's attorneys in the course of their work in the Prior Action, in

essence, asserted that Brady did not have the power to prevent the sale of the Building's air

rights. This is not, as Brady would have it, deceit. It is argument, and, in the end, a statement of

the law, and cannot serve as a basis for a cause of action under Section 487 of the Judiciary Law

(Co-op Complaint, thirteenth cause of action).

  *D. Amend Caption*

  Brady seeks leave to "amend the caption" in the Katz complaint to name various

Sherwood and McCourt-related entities as defendants in addition to Katz and McCourt, the

entities' alleged principals. Leaving aside the viability of such a claim against entities with no

connection to the subject transaction, the addition of these corporate defendants will not save the

Katz Action from dismissal. The motion is denied as moot.

  *E. Sanctions*

  It is clear from the papers and the transaction's history that Brady acted in bad faith in

bringing the instant cases. His misinterpretation of the prior judgment, his feigned ignorance of

the origin or meaning of the phrase "transferable development rights", and his argument that a

decision which he appealed to no avail is not binding are but a few examples of the frivolous

arguments made in the instant actions. Further, plaintiff, a stranger to the McCourt transaction,

had no basis for seeking compensatory and punitive damages from McCourt (*see* Katz

Complaint, prayer for relief, ¶¶ 5—6) or, for that matter, Katz. Both individuals were the mere principals of the entities involved in the subject transactions. Similarly, there are no allegations supporting any viable cause of action against Owain Hughes, the prior owner of the Unit, who appears to have been named as a defendant solely to retaliate for his refusal to support Brady's claim (*see* Co-op Action, NYSCEF Doc. No. 121, p. 5).[10]

In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance. It appears from Brady's submissions that even before he purchased the unit he was well aware of the Co-op's efforts to sell the air rights and that his concern, at first, was only that the price the Co-op was entertaining was too low (Co-op Complaint ¶ 45; *see also* Co-op Action, NYSCEF Doc. No. 112; Prior Action, decision and order, Mar 13, 2009, at *2 n 1). While Brady claims to be scandalized by the substantial profits enjoyed by Sherwood in flipping the adjoining lot to the McCourt entity, he does not seem offended by the idea that *his* $5 million purchase of the Building's top unit should entitle him to control over what he claims are $100 million worth of air rights under a theory which only he is clever enough to understand and which was only revealed to him by certain "professionals" more than a year after he bought his shares. The trial and appellate courts in the Prior Action have denied him such control. Undeterred, he has ignored these court rulings

---

[10] Brady and Hughes had agreed that if the Building sold its air rights within a year of Hughes's sale to Brady, then Brady and Hughes would split the proceeds (Co-op Action, NYSCEF Doc. No. 121, p. 5). Needless to say, this does not constitute a representation that the owner of the unit owned the Building's air rights. Rather, it was merely an agreement to share in any dividends paid to the twelfth floor tenant as a shareholder of the Co-op. Indeed, according to the Co-op, Brady has received, without protest, a total of $205,066.08 of dividends from what he claims was the Co-op's unlawful and *ultra vires* sale (Co-op Action, affidavit of Desiree Greene, sworn to on March 26, 2014, ¶ 4).

22

and brought these meritless actions, abusing the judicial process (Rules of Chief Admin of Cts [22 NYCRR] § 130-1.1). This is a near perfect example of frivolous conduct and warrants defendants' requests for the imposition of sanctions (*see, e.g., Pentalpha Enters., Ltd. v Cooper & Dunham LLP*, 91 AD3d 451 [1st Dept 2012]; *Great Am. Ins Cos. v Bearcat Fin. Servs., Inc.*, 90 AD3d 533 [1st Dept 2011]). The court declines to impose a filing injunction upon Brady at this time, though he is warned not to further test the court's patience by prosecuting claims that have either been determined or that he has been told are not ripe.

Accordingly, in the action entitled *Brady v 450 West 31st Street Owners Corp., et al.*, bearing the index number 157779/2013 it is

ORDERED that (1) the motion of James Brady to file a sur-reply is granted; (2) the motions of the defendants to dismiss the complaint are granted, the complaint is dismissed in its entirety against all the defendants with prejudice and the Clerk is directed to enter judgments dismissing the action with prejudice against all defendants, with costs and disbursements; (3) the motions for sanctions by defendants 450 West 31st Street Owners Corp., Desiree Greene, Jim Franco, Karen Atta, Molly Blienden, Priscilla McGeehon, Bill Smith, Owain Hughes, Linda Kramer, Chodosh Realty Services Inc., Jon Chodosh, Stanley Kaufman, Kaufman Friedman Plotnicki & Grun LLP, Vincent Hanley and Hanley & Goble are granted, and plaintiff James Brady is hereby directed to pay to the aforesaid defendants their reasonable attorney's fees and other expenses incurred as a result of this action, the amount of which is hereby referred to a Special Referee to hear and determine; and (4) the motions by defendants 450 West 31st Street Owners Corp., Desiree Greene, Jim Franco, Karen Atta, Molly Blienden, Priscilla McGeehon,

Bill Smith, Owain Hughes, Linda Kramer, Chodosh Realty Services Inc. and Jon Chodosh for an

injunction against further litigation are denied; and it is further

ORDERED that counsel for the defendants on whose behalf the above reference is

directed shall, within 30 days from the date of this order, serve a copy of this order with notice of

entry upon the Special Referee Clerk by an email bearing the subject line "Service of Order" and

sent to spref-nyef@nycourts.gov, which notice shall be accompanied by a completed Information

Sheet (copies are available at http://www.nycourts.gov/courts/1jd/supctmanh/ under the

"References" section of the "Courthouse Procedures" option in the "Court Operations" menu),

and the Special Referee Clerk is hereby directed to place this matter on the calendar of the

Special Referee's Part for the earliest convenient date; and it is further

ORDERED that upon the entry of said Special Referee's Report, the Clerk of the Court is

hereby directed to enter judgment awarding attorney's fees as determined by the Special Referee;

and it is further

ORDERED in the action entitled *Brady v Katz, et al.*, bearing the index number

654226/2013, that (1) the motion of James Brady for recusal is denied; (2) the motions of the

defendants to dismiss the complaint are granted, the complaint is dismissed in its entirety against

all the defendants with prejudice, and the Clerk is directed to enter judgments dismissing the

action with prejudice against all defendants, with costs and disbursements; (3) the motion of

James Brady to amend the complaint or the caption is denied; (4) the motions for sanctions by

Jeffrey Katz, Long Wharf Real Estate Partners, LLC, Dennis W. Russo, and Herrick Feinstein

LLP are granted, and plaintiff James Brady is hereby directed to pay the aforesaid defendants

their reasonable attorney's fees and other expenses incurred as a result of said action, the amount

24

of which is hereby referred to a Special Referee to hear and determine; and (5) the motion by the

aforesaid defendants for an injunction against further litigation is denied; and it is further

ORDERED that counsel for the defendants on whose behalf the above reference is

directed shall, within 30 days from the date of this order, serve a copy of this order with notice of

entry upon the Special Referee Clerk in the manner described above, and the Special Referee

Clerk is hereby directed to place this matter on the calendar of the Special Referee's Part for the

earliest convenient date; and it is further

ORDERED that upon the entry of said Special Referee's Report, the Clerk of the Court is

hereby directed to enter judgment awarding attorney's fees as determined by the Special Referee.

ENTER

Dated: July 15, 2014

_____
J.S.C.