**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

JAMES H. BRADY,

                                        Plaintiff,                          **16-CV-2287 (GBD)(SN)**

                -against-                                                    <u>**REPORT AND**</u>
                                                                            <u>**RECOMMENDATION**</u>
JOHN GOLDMAN, ESQ., et al.,

                                        Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

        On March 29, 2016, pro se plaintiff James H. Brady filed suit against ten individually

named lawyers and seven law firms who had represented his adversaries in prior litigation in

New York state court. That litigation pertained to Brady's claim that he owned the air rights

appurtenant to his cooperative unit on the 12th floor of a building at 450 West 31st Street, New

York, NY. Brady contends that defendants' conduct in a series of 2013 state court was

tantamount to a violation of New York Judiciary Law § 487 prohibiting attorney deceit, common

law fraud, and intentional infliction of emotional distress. Compl. ¶¶ 87–100 (ECF No. 1). Brady

asks the Court to vacate a July 15, 2014 decision by Justice Shirley Kornreich of the New York

Supreme Court, New York County, pursuant to Federal Rule of Civil Procedure 60(b)(3), on the

grounds that it was allegedly procured through fraud. Compl. ¶¶ 81–86.

        This is the ninth case that Brady has brought in regards to the subject matter of his

cooperative's alleged air rights, and the eighth such case after the dispute was finally

adjudicated. <u>See</u> <u>Brady v. 450 West 31st Street Owners Corp.</u>, 894 N.Y.S.2d 416 (1st Dep't

2010), denying leave to appeal, 16 N.Y.3d 731 (2011). As shall be set forth below, these cases have come to allege a far-reaching conspiracy involving virtually all of the lawyers and state court judges involved in Brady's case, the New York Attorney General, the New York Commission on Judicial Conduct, the New York County District Attorney, the City and State of New York, and news organizations such as the Associated Press and the New York Times. Each of these claims has been dismissed or recommended dismissed on grounds of collateral estoppel, immunity, subject matter jurisdiction, standing, or failure to state a claim. Brady has already been subject to significant monetary sanctions from New York state courts and is the subjective of a state protective order prohibiting him from initiating any further litigation as a party plaintiff without prior approval of the Administrative Judge.

Because the present claims brought by Brady fail to state a claim on the merits, are barred by the Rooker-Feldman doctrine and collateral estoppel, and are part of a pattern of repetitive, vexatious litigation stemming back to 2013, the Court recommends that Brady's claims be DENIED WITH PREJUDICE, without leave to refile. Furthermore, the Court shall issue a separate order directing Brady to show cause as to why a filing injunction should not be issued barring Brady from commencing any more lawsuits or making any additional motions related to his cooperative's alleged air rights.

## BACKGROUND

The subject matter of this dispute relates to a 2007 lawsuit between James and Jane Brady and 450 West 31st Owners Corp. ("Owners Corp."), the cooperative board for a property located at 450 West 31st Street, New York, NY. In 2007, Owners Corp. sought to sell the building's transferable development rights ("air rights") to an adjacent property owner. The Bradys, who owned a commercial cooperative unit on the 12th floor of the building, argued that

an amended offering plan from 1980 granted them the air rights appurtenant to their apartment, and therefore sought to enjoin the sale in the Supreme Court, New York County.

On July 2, 2008, Justice Marcy S. Friedman granted summary judgment for Owners Corp. and dismissed the complaint. The court found that Owners Corp., not Brady, was the owner of the air rights and therefore could transfer such rights without seeking any waiver from Brady, though he did have the limited right "to construct or extend structures upon the roof" in accordance with applicable law. Brady v. 450 West 31st Street Owners Corp., 2008 WL 2713579 (Sup. Ct. N.Y. Cnty. July 2, 2008). The Court denied Brady's motion for reargument. Brady v. 450 West 31st Street Owners Corp., 2009 WL 803427 (Sup. Ct. N.Y. Cnty. March 13, 2009) ("It is well-settled that a right to maintain or construct roof-top structures may co-exist with the transfer of development rights."). This decision was unanimously affirmed by the Appellate Division. Brady v. 450 West 31st Street Owners Corp., 894 N.Y.S.2d 416, 416 (1st Dep't 2010) (noting that the offering plan had "no express language giving plaintiffs ownership or veto power" over air rights and finding that they could only construct or extend structures "without the use of the building's development rights."). A judge of the Court of Appeals denied leave to appeal and reargument. 15 N.Y.3d 710 (2010); 16 N.Y.3d 731 (2011). Therefore, the decision regarding the ownership of 450 West 31st Street's air rights was final as of January 11, 2011.

Brady, however, continued to attempt to litigate this issue. In 2013, he filed two additional cases in Supreme Court, New York County against, *inter alia*, Owners Corp. and its individual members, law firms who represented the co-op in the 2007 action, the prior owner from whom Brady had purchased his cooperative unit, the eventual purchaser of the air rights, the law firm representing the purchaser, a title company that issued a certificate in connection

with the air rights transfer, and a subsequent purchaser of the adjoining property. Brady v. 450 West 31st Street Owners Corp., Index No. 15779/2013; Brady v. Katz, Index No. 654226/2013.

These cases were consolidated before Justice Shirley Kornreich and dismissed on collateral estoppel grounds. Brady v. 450 West 31st Street Owners Corp., 2014 WL 3515139 (Sup. Ct. N.Y. Cnty. July 15, 2014) (ECF No. 44-6). Justice Kornreich further stated that Brady's "dragging more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance" were "a near perfect example of frivolous conduct," and imposed attorneys' fees as a sanction. Id.

The Defendant attorneys and law firms in this case all represented parties adverse to Brady in the 2013 litigation. Lewis Brisbois Bisgaard & Smith LLP ("LBBS") and LBBS attorneys Mark K. Anesh and Jamie Wozman represented four defendants in the 2013 Owners Corp. case. Compl. ¶ 59–60. Greenberg Traurig LLP and Greenberg Traurig attorneys Steven Sinatra and Daniel R. Milstein represented the subsequent purchaser and the CEO in the 2013 Katz case. Compl. ¶ 60. Dentons US LLP and Dentons attorney Richard M. Zuckerman represented the title company in the 2013 Katz case. Compl. ¶ 60. Herrick, Feinstein LLP and Herrick, Feinstein attorney John Goldman represented four defendants, including Herrick, Feinstein LLP itself, in the 2013 Katz case. Compl. ¶ 59.  Steptoe & Johnson LLP and Steptoe & Johnson attorney Justin Y.K. Chu represented Greenberg Traurig LLP and Deirdre Carson in the 2013 Katz case. Compl. ¶ 59. Augustine & Eberle LLP and Augustine & Eberle attorney Joseph P. Augustine represented 450 West 31st Street Corp. in the 2013 450 West 31st Street Corp case. Compl. ¶ 59.  It is not clear from the pleadings which client O'Reilly Stoutenburg Richards LLP and/or attorney Adam Richards represented.

Despite having incurred a significant monetary sanction and having been unequivocally told that all claims relating to his alleged entitlement to air rights were barred by collateral estoppel, Brady continued to litigate claims stemming from the same facts in both federal and state courts. As relevant here, Brady brought suit against the New York County District Attorney on May 25, 2015, alleging that the District Attorney had failed to investigate the "judicial corruption" in this case. Brady v. New York County District Attorney, Index No. 154496/15. In dismissing the claims on November 23, 2015, on the grounds of absolute immunity, Justice Margaret A. Chan issued a protective order barring Brady from "initiating any further litigation as party plaintiff without prior approval of the Administrative Judge of the court in which he seeks to bring a further motion or commence an action . . . ." ECF No. 44–13.

Barred from the state courts, Brady filed a trio of cases in this District, of which this case is but one. In Brady v. Schneiderman, Brady claimed that the Attorney General of the State of New York violated his equal protection rights by failing to investigate the conduct of the state judges who rendered decisions in the prior cases involving his alleged entitlement to the air rights. This case was dismissed for lack of standing. Brady v. Schneiderman, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 (S.D.N.Y. July 13, 2016). In Brady v. Associated Press, No. 16-CV-2693, Brady sued eight news agencies and fifty John Doe defendants who supposedly "deliberately, and in violation of their duty to the public, kept the largest public corruption scandal in U.S. history out of the news." (ECF No. 1 in No. 16-CV-2693). On October 4, 2016, U.S. Magistrate Judge Kevin N. Fox recommended the dismissal of those claims to the Honorable George B. Daniels. (ECF No. 62 in No. 16-CV-2693).

In this case, Brady seeks the vacatur of the July 15, 2014 state court decision issued by Justice Kornreich as well as money damages of over $100 million dollars against the defendants

for violations of New York Judiciary Law § 487, common law fraud, and intentional infliction of emotional distress. Compl. ¶¶ 81–100.

## DISCUSSION

### I.      Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff, however, "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id.; Makarova, 201 F.3d at 113.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555.) If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

The Court may consider any written documents that are attached to a complaint,
incorporated by reference, or are "integral" to it. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).
This includes documents that the plaintiff relied on in bringing suit and that are either in the
plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which
judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir.
2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Judicial notice may be
taken of prior court decisions and "pleadings in other lawsuits attached to the defendants' motion
to dismiss, as a matter of public record." Faulkner v. Verizon Commc'ns, Inc., 156 F. Supp. 2d
384, 391 (S.D.N.Y. 2001).

When a court is faced with a motion to dismiss pursuant to both Rule 12(b)(1) and Rule
12(b)(6), it should "decide the 'jurisdictional question [under Rule 12(b)(1)] first because a
disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of
jurisdiction.'" Tirone v. N.Y. Stock Exch., Inc., No. 05-cv-8703 (WHP), 2007 WL 2164064, at
*3 (S.D.N.Y. July 27, 2007) (quoting Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158
(E.D.N.Y. 1998)).

When faced with a *pro se* litigant, the Court must "construe [the] complaint liberally and
interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d
162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). See Haines v. Kerner,
404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however . . . threadbare recitals of the
elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis,
618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to
draw the most favorable inferences" that the complaint supports, it "cannot invent factual
allegations that [the plaintiff] has not pled." Id.

## II.        Subject Matter Jurisdiction

### A.        Diversity Jurisdiction

A court may exercise diversity jurisdiction only when there is complete diversity between the parties. "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

In this case, Brady claims that diversity jurisdiction is proper because he is a citizen of New Jersey and all of the individual defendants have business addresses in New York. Compl. ¶¶ 9–16. The fact that the individual defendants have business addresses in New York does not, however, mean that they are citizens of New York. "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). A domicile is a place where a person has "his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id. (citing 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3612, at 526 (2d ed. 1984)). Because Brady has not pled any facts regarding the domicile of any of the defendants, his complaint is facially insufficient for this Court to assert diversity jurisdiction as to the individual defendants.

Moreover, all of the law firm defendants are organized as limited liability partnerships (LLPs). Where a defendant is a partnership, a plaintiff must allege the citizenship of each member of the partnership in order to adequately plead subject matter jurisdiction. See Prospect Funding Holdings, LLC v. Fennell, No. 15-CV-4176 (LLS), 2015 WL 4477120, at *2 (S.D.N.Y.

July 15, 2015). Brady's complaint lists only the principal place of business of each LLP, and it does not demonstrate that no member of any partnership is a citizen of New Jersey. Compl. ¶¶ 9–16. Therefore, Brady has failed to meet his burden to plead facts proving complete diversity of jurisdiction as to all defendants.

Generally, a pro se litigant would be provided an opportunity to cure this deficiency in pleading. "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). In this case, because the Court has determined that each and every cause of action asserted independently fails to state a claim under Rule 12(b)(6) and could not be cured by amendment, the Court believes that granting leave to amend the complaint to plead diversity jurisdiction would be futile. Cf. Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972) (affirming denial of leave to amend pro se complaint where it consisted of a "labyrinthian prolixity of unrelated and vituperative charges that defied comprehension").

### B.   Rooker-Feldman Doctrine

The Supreme Court has consistently held that, within the federal judiciary, only it has jurisdiction to hear appeals from state courts, and that lower federal courts have no authority to review state court judgments. Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust. Co., 263 U.S. 413, 415–16 (1923); see also Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) ("The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments . . . unless otherwise provided by Congress.")

The Court of Appeals has established a four-part test governing when the Rooker-Feldman doctrine applies. "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced' . . . ." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005)).

The basis of all of Brady's claims is that Defendants and Justice Shirley Kornreich engaged in a course of fraudulent conduct that led to Justice Kornreich's July 15, 2014 decision to deny his air rights claims on collateral estoppel grounds and impose sanctions. Compl. ¶¶ 58–70. Accordingly, in his first count, Brady seeks the vacatur (purportedly pursuant to Rule 60(b)(3)) of a final state court decision that was unfavorable to him. Compl. ¶¶ 5, 81–86.

Brady's request to vacate the state court judgment runs squarely into the Rooker-Feldman doctrine. Despite his claims to the contrary, he was plainly the loser in the state court proceeding that he seeks to vacate. Brady v. 450 West 31st Street Owners Corp., 2014 WL 3515139 (Sup. Ct. N.Y. Cnty. July 15, 2014), (ECF No. 44-6). He explicitly claims that he was injured by the judgment in question. Compl. ¶ 66–70. He expressly requests that the Court vacate the judgment. Compl. ¶ 81–86. And the judgment in question was rendered on July 14, 2014, before the proceedings in this case began. Compl. ¶ 66–70.

Nor can Brady escape the limitations of the Rooker-Feldman doctrine by claiming that the judgment was obtained fraudulently. The Court of Appeals for the Second Circuit "has indicated that it would be unwilling to recognize a fraud exception" to the doctrine. Roberts v. Perez, No. 13-CV-5612 (JMF), 2014 WL 3883418, at *4 (S.D.N.Y. Aug. 7, 2014) (citing

Kropelnicki, 290 F.3d at 128). Therefore, Brady's first count requesting vacatur of the July 15, 2014 decision by Justice Kornreich must be dismissed as barred by the Rooker-Feldman doctrine.

## III.   Collateral Estoppel

"The doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." Boguslavsky v. Kaplan, 159 F.3d 715, 719–20 (2d Cir. 1998). Generally, for collateral estoppel to apply, four prerequisites must be satisfied: (1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits. See id. at 720.

Even if the Rooker-Feldman doctrine of federalism somehow did not bar Brady's claim seeking to vacate the state court judgment, he ultimately seeks to challenge judicial determinations regarding his entitlement to the air rights above his building and his prior frivolous litigation conduct. The issues were identical in the last proceeding, were actually litigated and actually decided, Brady had a full and fair opportunity to litigate the issue (including his right to appeal to the N.Y. Appellate Division and Court of Appeals), and there was plainly a valid and final judgment on the merits that adjudicated the rights of the parties.

Therefore, Brady's claims seeking vacatur of the state court judgment are barred by collateral estoppel.

## IV.   Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

As described above, Brady's request to vacate the state court judgment is unequivocally barred by the operation of the Rooker-Feldman doctrine and general principles of collateral

estoppel, and should therefore be dismissed under Rule 12(b)(1). Brady's remaining claims are so closely tied to the validity of the state court judgment that they could arguably be dismissed under collateral estoppel and <u>Rooker</u>-<u>Feldman</u> grounds as well. And, as noted in Section II.A, Brady has also failed to satisfy his burden in pleading diversity jurisdiction. Therefore, the Court could deny these claims under Rule 12(b)(1). But because Brady's history of repetitive litigation warrants the denial of leave to amend the complaint, the Court also finds that Brady's claims under N.Y. Judiciary Law § 487 and New York's common law fraud and intentional infliction of emotional distress standards fail to state a claim under Rule 12(b)(6).

### A. New York Judiciary Law § 487

New York Judiciary Law § 487 states, in pertinent part, that an attorney who is "guilty of any deceit or collusion or consent to any deceit or collusion, with intent to deceive the Court or any party . . . forfeits to the party injured treble damages to be recovered in a civil action." Even where a plaintiff alleges deceit by an attorney, § 487 "provides recourse only where there is a chronic and extreme pattern of legal delinquency." <u>Solow Management Corp. v. Seltzer</u>, 795 N.Y.S.2d 448, 448 (1st Dep't 2005). Statements made within the bounds of vigorous advocacy in an adversarial proceeding may not generally be the basis for liability. "[A]n action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487." <u>O'Callaghan v. Sifre</u>, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (citation and internal quotation marks omitted).

First, § 487 does not allow an unsuccessful litigant to commence a plenary action against an attorney when that litigant was aware of the underlying facts while the prior action was pending; rather, such a claim must be raised in the action where the alleged "deceit" occurred. "A party who has lost a case as a result of alleged fraud or false testimony cannot collaterally

attack the judgment in a separate action for damages" against opposing counsel under § 487. Specialized Indus. Servs. Corp. v. Carter, 890 N.Y.S.2d 90, 92 (2d Dep't 2009) (reciting rule but noting exception where complaint "has sufficiently alleged a larger fraudulent scheme greater in scope than the issues determined in the prior proceeding"); see also New York City Transit Auth. v. Morris J. Eisen, P.C., 715 N.Y.S.2d 232, 239 (1st Dep't 2000) (same). The rule is generally limited to situations where the losing party was "aware of the alleged misconduct at the time of the prior action." Hansen v. Werther, 767 N.Y.S.2d 702, 702–03 (3d Dep't 2003). In this case, Brady was aware of defendants' conduct during the 2013 proceeding. Because this conduct related to the very same issues determined in the state court proceeding (i.e. his entitlement to air rights), he could only raise § 487 claims in the context of that proceeding.

Even if Brady could bring his claim as a plenary action, it is clear that defendants' conduct could not plausibly be characterized as "deceit or collusion," much less the "chronic and extreme pattern of legal delinquency" that the law requires.

Brady first alleges that various memoranda of law submitted by defendants in the 2013-2014 state court proceedings in support of their successful motion to dismiss were deceitful. Compl. ¶ 59. The memoranda in question reference the past state court decisions that collaterally estopped Brady from raising his claim, his maintenance of a website called bullyjudges.com that criticized the judges who rendered decisions in his previous cases, and various disciplinary complaints filed by Brady against these judges. Id. Notably, Brady does not allege, and the pleadings do not support an allegation, that any of these claims were false; namely that the prior state court decisions did not exist, that he did not maintain such a website, or that he did not make such complaints. Therefore, the Court finds nothing that could be characterized as deceitful, even when drawing all inferences in Brady's favor.

Brady further alleges that various representations that defendants made at a March 18, 2014 oral argument before Justice Kornreich proved that their assertion that he had lost the initial litigation was false. Compl. ¶¶ 60–61. An examination of the sections of the transcript of that hearing in the complaint indicate that Justice Kornreich questioned the defendants as to their understanding of the rights that Brady had under the Offering Plan and the effect of the prior state court decisions, and the defendants answered in a manner wholly consistent with both those decisions and their litigation position—that Brady had the right to build structures on the roof but did not own the air rights to the building. The Court finds no admission in Brady's pleading that suggests that any part of the defendants' oral statements or previously submitted memoranda of law could have been deceitful or inaccurate.

Finally, Brady alleges that defendants falsely and/or deceitfully opposed his appeals to the Appellate Division and the Court of Appeals. Compl. ¶ 72. The sections of the memoranda of law and attorney affirmations submitted by defendants in opposition to Brady's various motions for leave to appeal, reargument, and stays of the lower court decision once again reference prior state court decisions and Brady's bullyjudges.com website and state their clients' position that the lower court decision was correct. Once again, Brady fails to demonstrate that any of the statements made were false or deceitful.

Therefore, Brady's claim under N.Y. Judiciary Law § 487 should be dismissed. The claim was waived when it was not raised in the state court proceeding before Justice Kornreich. Moreover, even if the claim were to be permitted as a plenary action, the allegations in the complaint do not and cannot come close to stating a claim under its provisions.

### B.      Common Law Fraud

Under New York law, the elements for fraud require proof that (1) defendants made a material misrepresentation or omission of fact, (2) defendants knew that it was false or made the representation recklessly without regard to whether it was true or false, (3) defendants made the representation to induce the plaintiff to rely upon it, (4) plaintiff did justifiably rely upon it, and (5) plaintiff sustained damages. Crigger v. Fahnenstock & Co., 443 F.3d 230, 234 (2d. Cir. 2006). While malice or intent may be pled generally, Federal Rule of Civil Procedure 9(b) requires at the pleading stage that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . ." At a minimum, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements or omissions were fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). It must further "allege facts that give rise to a strong inference of fraudulent intent" that provide at least "strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

For the reasons discussed in the context of Brady's claims under New York Judiciary Law § 487, he has overwhelmingly failed to meet the pleading requirements of Rule 9(b). While Brady has identified the statements, speakers, and context upon which he bases his fraud claims, he has no plausible explanation for why the statements are fraudulent. Even under the highly questionable assumption that a statement to a judicial officer could ever induce reliance by a litigant before that court, Brady has failed to identify any statement that any defendant has made that could plausibly be false. Defendants' description of Brady's unsuccessful prior state court

litigation is accurate, as a cursory review of the relevant state court decisions demonstrates.

Brady has also not denied that he did in fact create and operate the website bullyjudges.com.

Because Brady has failed to plead facts that could plausibly suggest that defendants made a

material misrepresentation or omission of fact, there is no question of malicious or fraudulent

intent. Therefore, Brady's common law fraud claim should be dismissed for failure to state a

claim.

### C.    Intentional Infliction of Emotional Distress

New York law on intentional infliction of emotional distress (IIED) requires a plaintiff to

plead facts that tend to show (1) extreme and outrageous conduct; (2) intent to cause severe

emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe

emotional distress. Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). Such conduct

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." Id. at 122 (citations and internal quotation marks omitted). Cases relying on

statements made in the context of adversarial litigation have been summarily dismissed under

this standard. See, e.g., Kaye v. Trump, 873 N.Y.S.2d 5, 6 (1st Dep't 2009) (statements made in

adversarial litigation "cannot provide a foundation for the claim" of IIED); Yalkowsky v.

Century Apts. Assocs., 626 N.Y.S.2d 181, 183 (1st Dep't 1995) (holding that such claim "must

be dismissed").

Even if claims made in adversarial litigation were not categorically barred from serving

as the basis for an IIED claim, Brady has not come close to pleading that defendants' oral and

written advocacy on behalf of their clients—which, as described above, appears from the face of

the complaint to have been accurate and ultimately successful—could possibly be considered

"atrocious and utterly intolerable in a civilized community." Accordingly, Brady's IIED claim should be dismissed for failure to state a claim.

## V.     Filing Injunction

In addition to moving to dismiss, defendants also request that the Court issue a filing injunction against Brady barring him from commencing additional lawsuits related to the subject matter of his alleged entitlement to air rights appurtenant to his unit at 450 West 31st Street or any of his claims that have arisen collateral to that dispute.

The issuance of an injunction barring a litigant from the courthouse "is a serious matter, 'for access to the Courts is one of the cherished freedoms of our system of government.'" Raffe v. Doe, 619 F. Supp. 891, 898 (S.D.N.Y. 1985) (citing Kane v. City of New York, 468 F. Supp. 586, 590 (S.D.N.Y. 1979)). Nevertheless, in exceptional circumstances, it is "beyond peradventure" that a "district court possesse[s] the authority to enjoin [a litigant] from further vexatious litigation." Safir v. U.S. Lines Inc., 792 F.2d 19, 23 (2d Cir. 1986). The Court of Appeals has held that district courts are to consider the following factors in determining whether to impose this remedy:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (quoting Safir, 792 F.2d at 24).

The issue in question here was finally adjudicated on January 11, 2011, when the New York Court of Appeals denied reargument on his request to appeal the decision of the New York

Appellate Division, First Department. Contrary to Brady's assertions, the record plainly demonstrates that the Appellate Division held that the offering plan "contain[ed] no express language giving plaintiffs ownership of or veto power over the building's ownership of or veto power over the building's development rights or air rights," and reserved for Brady only the right "as permitted by the relevant laws, to construct or extend structures on the roof that may be built without the use of the building's development rights." Brady v. 450 31st Owners Corp., 894 N.Y.S.2d 416, 416 (1st Dep't 2010) (emphasis added). In short, the record is clear: New York state courts decided in 2011 that Brady was not entitled to the rights that he is seeking, and, as he exhausted all of his appellate remedies, such decision was final.

All of Brady's subsequent cases, including the case before the Court, have been a series of collateral attacks on the initial litigation by impugning the motivations and integrity of all of the actors involved, and even those of government and private entities wholly unrelated to his case. This is not how our judicial system works. While a litigant is entitled to all of the appellate remedies provided for by law, he is required to abide and respect the judgment entered once it has become final. Indeed, the judiciary has an abiding interest in finality. See Taylor v. Sturgell, 553 U.S. 880, 892 (2007) ("By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, the [doctrine of collateral estoppel] protect[s] against the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." (citation omitted)).

Therefore, in considering the first two factors set forth by the Court of Appeals, the Court finds that Brady has now presented a long series of lawsuits that could only be considered vexatious, harassing, and duplicative and in which he has no objective good-faith expectation of

prevailing. See Brady v. Associated Press, No. 16-CV-2693 (GBD)(KNF) (S.D.N.Y. filed on April 11, 2016, Report and Recommendation recommending dismissal of claims against eight news companies for failure to state a claim pending); Brady v. Schneiderman, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 (S.D.N.Y. July 13, 2016) (claims against New York State Attorney General dismissed on standing grounds); Brady v. New York County District Attorney, Index No. 154496/15 (ECF No. 44-13) (claims against New York County officials dismissed on November 23, 2015, filing injunction entered barring plaintiff from bringing further cases in New York state courts); Brady v. NYS Comm'n on Judicial Conduct, 15-CV-2264 (WHP) (S.D.N.Y. Apr. 29, 2015) (voluntarily dismissed complaint against, inter alia, Governor Andrew Cuomo and the New York State Commission on Judicial Conduct); Brady v. 450 West 31st Street Owners Corp., 2014 WL 3515139 (Sup. Ct. N.Y. Cnty. July 15, 2014), (ECF No. 44-6) (opinion dismissing consolidated cases Brady v. 450 West 31st Street Owners Corp., Index No. 15779/2013 and Brady v. Katz, Index No. 654226/2013 and imposing more than $400,000 of attorneys fees sanctions).

As to the Court of Appeals' third factor, Brady is proceeding pro se, in no small part because a lawyer would likely be subject to discipline for bringing such frivolous litigation. Though the Court must treat pro se litigants liberally, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants . . . and a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff[s] [are] calling to vindicate [their] rights." Lipin v. Hunt, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

It is similarly plain that Brady's litigation has strained the resources of both the federal and state judiciary and provoked needless expense among the parties, both private and public. This lawsuit alone has required the filing of seven motions to dismiss because of the number of

law firms and individual defendants named, while the <u>Associated Press</u> case has involved an even larger number of news organizations. Both New York State and New York County officials have had to expend public resources to move to dismiss complaints that were barred by doctrines of official immunity. Therefore, the Court of Appeals' fourth factor tilts in favor of a filing injunction as well.

Finally, there is strong evidence that other sanctions, including monetary penalties, would not be sufficient to deter further litigation from Brady. Indeed, he has twice been sanctioned by New York state courts. <u>See</u> <u>450 West 31st Street Owners Corp</u>, 2014 WL 3515139 (referring to Brady's "meritless actions, abusing the judicial process," stating that "[t]his is a near perfect example of frivolous conduct and warrants defendants' requests for the imposition of sanctions"); <u>New York County District Attorney</u>, Index No. 154496/15 (ECF No. 44-13) (referring to Brady's "pattern of vexatious conduct and repetitive litigation, including his penchant to inflict hagride on those who do not do his bidding" and enjoining him from further litigation). Instead of accepting the finality of the state courts' adjudication of his rights, however, he has merely proceeded on to the federal forum from which he has not yet been barred. On this record, the Court finds any sanction lesser than a filing injunction would be insufficient to protect the court, the parties, and the public interest.

The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard. <u>Moates v. Barkley</u>, 147 F.3d 207, 208 (2d Cir. 1998) (collecting cases). Therefore, by separate order, the Court shall issue an Order to Show Cause providing Brady with notice of the nature and scope of the recommended injunction and allowing him 30 days to argue why the Court should not recommend that such an injunction be entered. After Brady has had the

opportunity to show cause, the Court shall issue a subsequent report and recommendation to the Honorable George B. Daniels.

## CONCLUSION

For the foregoing reasons, I recommend that defendants' motions to dismiss plaintiff's complaint at Dkt. No 15, 22, 23, 29, 34, 45, and 50 be GRANTED without leave to amend. I defer recommendation on the entry of a filing injunction until Brady has had the opportunity to be heard on the issue.

SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            December 5, 2016

\*            \*            \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge George B. Daniels. The failure to file these timely objections will result in a

waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).


cc:     James H. Brady (*by Chambers*)
        510 Sicomac Avenue
        Wycoff, NJ 07481